```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         NASHVILLE DIVISION

SHERROD M. BURNETT,            )
                               )
          Plaintiff            )
                               )        No. 3:11-0279
v.                             )        Judge Sharp/Brown
                               )        Jury Demand
DARON HALL, VERNISTINE DALIN,  )
TONY WILKES, SYLVIA GRAY,      )
BRUCE HELMES, DAN WEIKAL,      )
JAMMIE JOHNSON and             )
GRANVISSE L. EARL-YOUNG,       )
                               )
          Defendants           )
```

**TO: THE HONORABLE KEVIN H. SHARP**

### REPORT AND RECOMMENDATION

Presently pending is a motion to dismiss (partial) the Plaintiff's free exercise claim (Docket Entry 41). In addition, the Magistrate Judge issued a show cause order (Docket Entry 45) requiring the Plaintiff to show cause why his case should not be dismissed for failure to obey court orders and to prosecute, and the Defendants have requested dismissal should the Plaintiff not make some effort to prosecute his case (Docket Entry 52, p. 2).[1]

For the reasons stated below, the Magistrate Judge recommends that the Plaintiff's free exercise claim be **DISMISSED** with prejudice for failing to state a claim and that the Plaintiff's remaining claims be **DISMISSED** with prejudice for failure to obey court orders and to prosecute his case under Fed. R. Civ. P. 41(b).

---

[1] It would have been clearer had this been filed as a separate motion under Fed. R. Civ. P. 41(b). However, the intent is clear.

## BACKGROUND

The Plaintiff's complaint in this matter (Docket Entry 1) alleges various civil rights violations against Sheriff Hall and various members of his staff. As Judge Trauger summarized in Docket Entry 4, pages 2-3:

> According to the complaint, the plaintiff is a practicing Muslim. He alleges that he is "striving to adhere to the original laws of ISLAM," which includes following a "Halaal" diet, but the defendants refuse to provide him with a Halaal diet. The plaintiff contends the defendants provide the plaintiff with a kosher diet in lieu of a Halaal diet. The plaintiff disputes that the kosher diet satisfies his Muslim religious tenets. The plaintiff asserts that he has filed multiple grievances concerning the matter, all to no avail, and that one of defendants responded to the plaintiff's grievance by telling the plaintiff that he could serve him bologna every day if he wanted.[2] The plaintiff alleges that, on several occasions when he has refused a kosher tray due to his religious objections, defendant Shelia Stinson yelled at him, using profanity, and threw his food tray in the trash.
>
> The plaintiff also alleges that his religious rights are being violated because he is unable to attend Muslim services while incarcerated. He states that other religious services are offered to inmates, such as Christian, Jewish, and Catholic services, but that the plaintiff was told that the facility "didn't have anyone to come volunteer in order to provide Muslim services each Friday."

In this same order Judge Trauger specifically forewarned the Plaintiff that failure to keep the Clerk's office informed of his current address would jeopardize the prosecution of this case (Docket Entry 4, p. 3).

---

[2] Only meat from animals slaughtered in accordance with Islamic procedure is considered "halaal," and to eat other meat is a sin. *See Muhammed v. Crosby*, 2009 WL 2913412, at *4 (N.D. Fla. Sept. 3, 2009).

2

The Defendants, in a motion to partially dismiss (Docket Entry 41), contend that the Plaintiff fails to state a viable free exercise violation because the jail failed to provide Islamic services. The complaint itself specifically alleges at page 6 that he was not able to attend Islamic Muslim services. He alleges that he spoke to various Defendants about this problem and that in the seven months he had been in the jail, the only services they call for are Christian church services. He states the defendant's told him that they did not have anyone to come volunteer in order to provide Muslim services on Fridays. He states that because of this [he] "can't even practice my spiritual and religious beliefs like the Christians, Jews and Catholic church services" (Docket Entry 1, p. 6).

The Plaintiff has been in and out of jail several times since filing his suit. It appears that when the Plaintiff was first released he filed a notice of change of address to 2809 Paden Drive, Nashville, Tennessee (Docket Entry 30). As of June 21, 2011, the Plaintiff was receiving mail at the Paden Drive address (Docket Entry 35). The Magistrate Judge set a Rule 16 scheduling conference for July 27, 2011, for the purpose of entering a scheduling order. The Plaintiff was directed to bring with him to his hearing any changes he believed necessary to a draft scheduling order that was sent to him by the Defendants' counsel (Docket Entry 36). This was sent to the Plaintiff by both regular and certified mail. The certified mail was returned to the Clerk with the

3

notation that it was unclaimed by the Plaintiff (Docket Entry 43). At the time scheduled for the case management conference the Plaintiff did not appear. The Magistrate Judge therefore entered a show cause order (Docket Entry 45) directing the Plaintiff to show cause on or before August 5, 2011, why the Magistrate Judge should not recommend his case be dismissed, either with or without prejudice for failure to prosecute and to obey court orders.

On August 4, 2011, the Defendants notified the Court that the Plaintiff was back in custody (Docket Entry 47). The Magistrate Judge then ordered the Clerk to resend pertinent documents to the Plaintiff and gave the Plaintiff 21 days from the entry of the order to respond to the Defendants' motion to dismiss, and again cautioned the Plaintiff that failure to keep a current address on file with the Court could lead to dismissal of his case for failure to prosecute and failure to obey Court orders (Docket Entry 48). This mail was signed for by the Plaintiff on August 12, 2011 (Docket Entry 51).

Most recently, the Defendants again notified the Court (Docket Entry 52) that Plaintiff had been released from custody and that they had no current address for him. The Court has received no change of address from Plaintiff since his release.

The Plaintiff has failed to respond to the motion to partially dismiss the case (Docket Entry 41); failed to attend the case management conference (Docket Entry 45); and failed to show

4

cause why the Magistrate Judge should not recommend his case be dismissed for failure to prosecute and obey Court orders.

## LEGAL DISCUSSION

The Magistrate Judge believes that the motion to partially dismiss is well-taken and should be **GRANTED**.

<u>Standard of Review on Motion to Dismiss</u>.

When evaluating a defendant's motion to dismiss under Rule 12(b)(6), a district court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true, as the moving party bears the burden of proving that no claim exists. *Erickson v. Pardus*, 550 U.S. 89, 89 (2007). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The district court need not treat as true "bare assertions or legal conclusions" and must evaluate the remaining factual allegations to determine if they are sufficient to "raise the right to relief above the speculative level." *Id.* Only claims that cross the line from possibility to plausibility are sufficient to state a claim. *Id.* This does not require a district judge to conduct an inquiry into the probability that the claim will succeed or that the facts are indeed true, but

5

instead it simply calls for enough facts to raise a "reasonable expectation" that discovery will reveal evidence of the alleged illegal conduct. *Id.* at 545. When the non-conclusory facts suggest two possible conclusions, one of which is alleged by the complaint but the other of which is more plausible, a court may dismiss the complaint for failing to cross the plausibility line. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951-52 (2009). The court need not review the claim for its probability success but rather should determine whether the alleged facts allow a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Plaintiff's Free Exercise Clause Claims.

The Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. Amend. I. The second of these clauses, the Free Exercise Clause, "withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion." *Sch. Dist. v. Schempp*, 374 U.S. 203, 222-23 (1963). In a case challenging free exercise of religion, a plaintiff must show "the coercive effect of the enactment as it operates against him in the practice of his religion." *Id.*

Several Sixth Circuit cases have denied prisoner challenges on Free Exercise Clause grounds. In *Thompson v. Kentucky*, the plaintiff prisoner brought a Free Exercise claim as well as an equal protection claim challenging the prison's allocation of its chapel: Christian services were allotted 23 ½

6

hours of chapel per week while Islamic services were allotted only 6 ½ hours per week. 712 F.2d 1078, 1078 (6th Cir. 1983). The Sixth Circuit held that the Free Exercise Clause does not guarantee "equal exercise of religion," nor does it require prisons to provide a Muslim leader at state expense. *Id*. at 1080. Similarly, in *Colvin v. Caruso*, the Sixth Circuit held that a prison did not violate the Free Exercise Clause by reasonably failing to provide Jewish services: Colvin was the only inmate requesting them, Jewish books were plentiful in the prison library, and the prison did not restrict his ability to practice Judaism privately or read Jewish literature. 605 F.3d 282, 282 (6th Cir. 2010).

The present complaint alleges that the jail personnel told him that they did not have anyone who was willing to volunteer to lead Islamic services. There is no allegation that they prohibited volunteers from coming to the jail or that any minister suggested by the Plaintiff was turned away. It appears that volunteers for various religious services were allowed, but the jail did not specifically provide for any services.

Nothing in the record suggests that the Davidson County Jail has restricted Plaintiff from practicing his religion. The prison's failure to provide Islamic services could be viewed as reasonable under *Colvin* if Plaintiff is the only prisoner requesting them. 605 F.3d at 282. The Free Exercise Clause does not require the jail to provide Muslim services equal to its Christian services or a Muslim religious leader at the jail's

7

expense. *Colvin,* 605 F.3d at 1080. Furthermore, Plaintiff does not assert that the jail prohibited him from reading literature related to his faith, practicing his religion privately, or even soliciting visitors for one-on-one prayer sessions. Simply put, Plaintiff's assertions fall far short of stating a violation of the Free Exercise Clause.

<u>Failure to Obey Court Orders Fed. R. Civil P. 41(b)</u>.

A dismissal with or without prejudice is a drastic remedy, and before the Court contemplates dismissing an action under Rule 41(b), the Court must specifically consider:

> "(1) whether the party's failure to cooperate is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dilatory conduct of the party; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) where the less drastic sanctions were imposed or considered before dismissal was granted. *Tetro v. Elliott Popham Pontiac*, 173 F.3d 988 (6th Cir. 1999).

In this case the Plaintiff was warned at the outset of the case that failure to keep a current address could lead to dismissal of his case (Docket Entry 4). Subsequently, following the Plaintiff's failure to attend a case management conference, he was again warned and directed to show cause why his case should not be dismissed (Docket Entry 45). The Court resent various documents, including the show cause order, to the Plaintiff when he was back in custody, giving him additional time to respond to Defendants' motion to dismiss and, again, advising him that failure to keep a current address on file could lead to dismissal of his

8

case (Docket Entry 48). The record reflects that the Plaintiff signed for this mail on August 12, 2011. As of the date of this Report and Recommendation, nothing further has been heard from the Plaintiff. From this disregard of a series of orders, the Magistrate Judge can only conclude that the Plaintiff acts are willful and in bad faith.

The Defendants state the Plaintiff has not provided his current address and that absent some effort by the Plaintiff to prosecute this matter, they request that it be dismissed.(Docket Entry 52) The Defendants are prejudiced by their lack of a current address or responses to their motions by the Plaintiff. Without any knowledge of where the Plaintiff is, they cannot conduct meaningful discovery in this case.

The Magistrate Judge, in issuing a show cause order on two occasions, has given the Plaintiff ample opportunity to correct the situation without the Magistrate Judge having to recommend any more drastic action. The Plaintiff has totally failed to comply and at present is totally out of touch with the Court. Less drastic measures have not worked.

Under these circumstances, the Magistrate Judge believes that dismissal under Rule 41(b) is appropriate. The Court must be able to control its docket and to move cases toward resolution. The Plaintiff is presently out of touch with the Court, has failed to respond to motions to dismiss or to undertake or participate in discovery, despite being given at least two opportunities to

9

explain his conduct. Under these circumstances, the Magistrate Judge believes that dismissal with prejudice is the only appropriate remedy.

## RECOMMENDATION

For the reasons stated above the Magistrate Judge Recommends the Plaintiff's Free Exercises claims be dismissed under be dismissed under Rule 12(b)(6) for failure to state a cause of action. That even if the complaint did state a free exercise cause of action that all claims be dismissed under Rule 41(b) for failure to prosecute and to obey court orders

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 22nd day of September, 2011.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge
